UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:23-CR-380 SRC (PLC) |
| SONNY SAGGAR, M.D., and<br>RENITA BARRINGER, | ) |
| Defendants. | ) |

**DEFENDANTS' OBJECTIONS TO THE
REPORT AND RECOMMENDATION (DOC. 80) REGARDING
DEFENDANTS' MOTION TO STRIKE PORTIONS OF THE INDICTMENT**

"Under 28 U.S.C. § 636(b)(1), when a party objects to a magistrate judge's report and recommendation, the district judge must conduct a de novo review of the portions of the report, findings, or recommendations to which the party objected; A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *United States v. Twiggs*, 2023 WL 7537044, at *3 (E.D. Mo. Nov. 14, 2023).

As set out in Defendants' Motion to Strike (Doc. 47), the Indictment relies on regulations promulgated by the Missouri Board of Registration for the Healing Arts which are invalid. Specifically, a key portion of the Indictment relies on 20 C.S.R. § 2150-2.240(1 )(D):

> 10. Special rules apply when an AP practices under a CPA at a location when the collaborating physician is not "continuously present." Mo. Rev. Stat.§ 334.037.7. "Continuously present" means that "the supervising physician is physically present and seeing each and every patient with the [AP] when said AP is seeing and/or treating a patient." 20 C.S.R. § 2150- 2.240(1 )(D). Before an AP may practice under a CPA at a location where the collaborating physician is not continuously present, the collaborating physician must "determine and document the completion of at least a one-month period of

1

> time during which the [AP] shall practice with the collaborating physician continuously present .... " Mo. Rev. Stat. § 334.037.7; 20 C.S.R. § 2150-2.240(1)(C).
>
> . . .
>
> 32. As a result of Dr. Saggar and Barringer's actions, the APs often never met and did not receive any training from their purported collaborating physicians, as required by 20 C.S.R. § 2150-2.240(1)(C)-(D). Contrary to the legal requirements regarding the use of APs, a collaborating physician was not continuously present at SLGH.

Doc. 1 at 4, 10. "AP" references Assistant Physician. As set out below, the Missouri Board of Registration for the Healing Arts overstepped their delegated authority when it provided its definition of "continuously present" related to APs, which the Indictment relies on in the forgoing paragraphs. The Court below indicated that the challenge to the validity of the regulation was not appropriate for a motion to strike under Rule 7. *See* Doc. 80 at 7. However, Rule 7(d) provides that the court may strike surplusage on motion of a defendant. Defendants submit that allegations regarding an invalid regulation is by definition surplusage: it is irrelevant because of the fact it is invalid and therefore could not be applied to a defendant or anyone else.

## Legal Standard For Motion To Strike

Federal Rule of Criminal Procedure 7(d) provides that "[u]pon the Defendant's motion, the court may strike surplusage from the indictment." Fed. R. Crim. P. 7. As the Eighth Circuit has said in multiple cases, a motion to strike surplusage from an indictment may be granted "where it is clear [that] the allegations contained therein are not relevant to the charge made **or** contain inflammatory and prejudicial matter." *United States v. Morales*, 813 F.3d 1058, 1066 (8th Cir. 2016) (emphasis added). "Rule 7(d)'s purpose is to limit the inclusion of irrelevant **or**

inflammatory facts." *Id*. (emphasis added).[1] Federal Rule of Evidence 401 which provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  A regulation which is invalid can never have a tendency to make a fact more or less probable. It does not have to be prejudicial (though it is here) because irrelevant evidence is never admissible.

In this District, the Honorable Judge Noce said it well:

> While evidence of such facts may be reasonably offered into evidence for the stated purpose at trial, it is premature to determine that such evidence will be admitted by the trial judge. Certainly, if the indictment is read to the jury with these allegations and at trial evidence of those facts is offered but not received, or if the government determines not to offer that evidence, even if such evidence is received into evidence by the court, given the sensitive subject matter . . ., it may be of little cautionary or remedial effect to instruct the jury that the indictment is not evidence, as the government proposes. The petit jury may

---

[1] Though here the challenged allegations are completely irrelevant, even when the language of the indictment "is more prejudicial to the defendant than relevant and beneficial to understanding the charges," it should be struck. *United States v. Harder*, 2014 WL 12783296, at *1 (D. Or. Mar. 17, 2014). "A motion to strike surplusage from an indictment is a matter within the discretion of the district court." *Morales*, 813 F.3d at 1066. In line with Judge Noce's approach, the Fourth Circuit has aptly stated:

> Although the cases defining surplusage sometimes inquire as to whether the material is 'relevant to the charges,' … this language should not be read as permitting any material that would be legally relevant at trial. Because so much material can qualify as legally relevant, such a reading would contravene the explicit language of Rule 7(c). Rather, as described by the Fourth Circuit in [*United States v. Hartsell*, 127 F.3d 343, 353 (4th Cir. 1997)], the question is whether that material is 'unnecessary' in making out a *prima facie* pleading of the violation.

*United States v. Cooper*, 384 F. Supp. 2d 958, 960 (W.D. Va. 2005). District courts routinely strike allegations that run afoul of these strictures. *See e.g.*, *United States v. Paulus*, 2015 WL 13735785, at *6 (E.D. Ky. Nov. 25, 2015), *report and recommendation adopted*, 2016 WL 280300 (E.D. Ky. Jan. 22, 2016) ("The risk of prejudice surrounding paragraphs 36–37 outweighs their probative value, and for that reason they should be stricken."); *United States v. Gerlay*, 2009 WL 3872143, at *3 (D. Alaska Nov. 17, 2009) ("The use of the civil finding of the State Medical Board is unnecessary to prove the related charges in the indictment and appears more prejudicial to the defendant than relevant and beneficial to understanding the charges."); *United States v. Groos*, 616 F. Supp. 2d 777, 790 (N.D. Ill. 2008); *United States v. Quinn*, 401 F. Supp. 2d 80, 99 (D.D.C. 2005) ("deletion from the indictment, moreover, will not impair the government's case in any way, but it will substantially reduce the possibility of prejudice.").

3

remain impressed that the grand jury found probable cause to believe those facts are true. The potential for undue prejudice is great and the government has not described any paramount purpose to be accomplished by including them in the indictment.

*United States v. Mock*, 2011 WL 13103436, at *5 (E.D. Mo. Mar. 14, 2011), *report and recommendation adopted*, 2011 WL 5102250 (E.D. Mo. Oct. 27, 2011).

**Here, a regulation which is null and void cannot have any relevance to any indictment, let alone the specific allegations in this case. Moreover, it is highly unfair and prejudicial to rely on a regulation that is null and void and that sets forth requirements that do not in fact exist. In other words, Paragraphs 10 and 32 are the very definition of "surplusage" under the Federal Rules. The Rule provides no limitation as to what type of surplusage can be challenged. These paragraphs should be stricken from the Indictment. It is not hyperbolic to say that the irrelevant, inaccurate and inflammatory allegations set out in those paragraphs infringe on Defendants' most fundamental rights to a fair trial.**

The Report and Recommendation acknowledges that there are at least two cases that "considered the validity of the statutory and regulatory scheme underlying the charges." *See* Doc. 80 at 6-7 citing (*Groos*, 616 F. Supp. 2d 777 at *783-790 and *Quinn*, 401 F. Supp. 2d 80, at *89-100). But the R&R differentiates those cases by noting they were motions to dismiss, not motions to strike. *See id.* But, certainly, a challenged regulation that would justify dismissal, would at a minimum justify striking the flawed allegations.

To determine this issue, the Court merely needs to address a pure question of law: whether 20 C.S.R. § 2150-2.240 is null and void because it attempts to expand and modify the applicable statute, Mo. Rev. Stat. § 334.037.7. This is only a question of statutory interpretation. No questions of fact exist.

**The Law**

Under Missouri law, "[w]hile administrative regulations are entitled to a presumption of validity and may not be overruled except for weighty reasons, the rules or regulations of a state agency are invalid if they are beyond the scope of authority conferred upon the agency, **or if they attempt to expand or modify statutes.**" *Spurgeon v. Missouri Consol. Health Care Plan*, 549 S.W.3d 465, 467 (Mo. App. 2018) (citing *Union Elec. Co. v. Director of Revenue*, 425 S.W.3d 118, 124-125 (Mo. banc 2014)) (citations omitted) (emphasis added). *See also Circuit City Stores, Inc. v. Dir. of Revenue*, 438 S.W.3d 397, 402 (Mo. 2014) (the agency's "regulation cannot enlarge the meaning of the statute beyond its terms."); *United Pharmacal Co. of Missouri Inc. v. Missouri Bd. of Pharmacy*, 159 S.W.3d 361, 365 (Mo. 2005) ("[O]nly rules promulgated by an administrative agency with properly delegated authority have the force and effect of law."); *Brown v. Melahn*, 824 S.W.2d 930, 933 (Mo. Ct. App. 1992)(" Rules are void if they are beyond the scope of the legislative authority conferred upon the state agency or if they attempt to expand or modify the statutes.").

For the purposes of Defendant's motion to strike, the Court must also consider Section 536.014 RSMo, which specifically provides that any rule that is in conflict with state law is void. RSMo § 536.014. In other words, if a regulation attempts to define statutory terms different than "their plain and ordinary meaning," it is invalid under § 536.014. "Regulations which exceed the authority granted the promulgating agency are null and void." *Pen-Yan Inv., Inc. v. Boyd Kansas City, Inc.*, 952 S.W.2d 299, 304 (Mo. App. W.D. 1997); *Parmley v. Missouri Dental Bd.*, 719 S.W.2d 745, 755 (Mo. 1986) ("erroneous regulations are a nullity").

I. **The Relied-Upon Regulation Is Void.**

Here, the definition of "continuously present" relied upon in the Indictment is invalid and

a nullity because it expands and modifies the statute itself. The relevant Missouri statute provides the following:

> The collaborating physician shall determine and document the completion of at least a one-month period of time during which the assistant physician shall practice with the collaborating physician continuously present before practicing in a setting where the collaborating physician is not continuously present.

RSMo § 334.037(7). The statute does not provide a definition of "continuously present." However, the Missouri Board of Registration for the Healing Arts promulgated the following relating to §34.037(7):

> (C) An assistant physician who desires to enter into a collaborative practice arrangement at a location where the collaborating physician is not continuously present shall practice together at the same location with the collaborating physician continuously present for a period of at least one (1) month before the collaborating assistant physician practices at a location where the collaborating physician is not present.
>
> (D) For purposes of this rule, the following shall apply:
> 1. The term "continuously present" shall mean the supervising physician is physically present and seeing each and every patient with the assistant physician when said assistant physician is seeing and/or treating a patient

20 C.S.R. § 2150-2.240.

As the Court can see, the definition of "continuously present" contained in the regulation is nowhere found in the statute.[2] Subsection (C) of the regulation talks in terms of "continuously present" and makes specific reference to "location" - which is the ordinary meaning of the phrase. However, Subsection (D) goes well beyond mere location and requires the collaborating doctor's presence in the exact room where each and every patient is seen. In other words, rather than the collaborating doctor needing to be in the building (the "location"), the regulation requires shoulder

---

[2] The Report and Recommendation suggested that the Defendants were relying upon the comparison of two different regulations. However, Defendants' point and basis for their argument is that the regulation should be compared to the statute and the regulation expands the statute. Discussion of various regulations is to demonstrate the point that the regulation is in conflict with the statute.

6

to shoulder participation in the exam room. **The regulation clearly "attempt[s] to expand or modify [the] statute[ ]"** contrary to Missouri case law and RSMo., § 536.014. *See*, *Spurgeon*, **549 S.W.3d at 467.**

Tellingly, the regulatory definition of "continuously present" in subsection (D) is even different from how the same phrase is used in subsection (C). The language of subsection (C) clearly talks in terms of the broader term "location" – "a collaborative practice arrangement **at a location** where the collaborating physician is not continuously present . . . **at the same location** with the collaborating physician continuously present . . . before the collaborating assistant physician practices **at a location** where the collaborating physician is not present." As reflected in Subsection (C), there is no suggestion in the statute that instead of a location (i.e., an office building), to be continuously present meant to be in the same exam room. Had the Missouri Legislature meant such, it could have said so. But it did not. Though Subsection (D) requires the collaborating doctor to be in the same exam room ("the supervising physician is physically present and seeing each and every patient"), nothing in §334.037(7) suggests the doctor must be in the same exam room.

Regulations and their application for other mid-level medical providers is also telling. Before there was such a thing as an "assistant physician," there were statutes and regulations regarding collaborating doctors for other mid-level medical providers -specifically physician assistants and nurse practitioners. For these other mid-level providers, the regulations addressing collaborating

7

doctors and "continuously present" are very similar to 20 C.S.R. § 2150-2.240(1)(C).[3] However, for physician assistants and nurse practitioners the Board of Registration for the Healing Arts did not promulgate any definition of "continuously present" like that found in 20 C.S.R. § 2150

---

[3] Compare

20 C.S.R. § 2150-2.240 Assistant Physician Collaborative Practice Agreements
    (C) An assistant physician who desires to enter into a collaborative practice arrangement at a location where the collaborating physician is not continuously present shall practice together at the same location with the collaborating physician continuously present for a period of at least one (1) month before the collaborating assistant physician practices at a location where the collaborating physician is not present.

20 § 2150-5.100 Collaborative Practice Arrangements with Nurses
    (2)(C)An APRN [Advanced Practice Nurse] who desires to enter into a collaborative practice arrangement at a location where the collaborating physician is not continuously present shall practice together at the same location with the collaborating physician continuously present for a period of at least one (1) month before the collaborating APRN practices at a location where the collaborating physician is not present. It is the responsibility of the collaborating physician to determine and document the completion of the same location practice described in the previous sentence.

 20 § 2150-7.135 Physician Assistant Collaborative Practice Arrangements
    (6) It is the responsibility of the collaborating physician to determine and document the completion of a one- (1-) month period of time during which the licensed physician assistant shall practice with a collaborating physician continuously present before practicing in a setting where a collaborating physician is not continuously present. The collaborating physician may determine what constitutes a one- (1-) month period.

2.240(1)(D) even though the statutory language for all three mid-level providers is basically the same.[4]

Importantly, in 2004, in *State Bd. of Registration for the Healing Arts, Petitioner, vs. Robert B. Smith, M.D., Respondent*, Mo. Admin. 03-1609 HA (June 10, 2004), the Board of Registration for the Healing Arts lost a decision specifically addressing collaborating doctors and "continuously present." **The hearing commission's decision made clear that under the same language found in Subsection (C) for APs, no requirement exists for the collaborating doctor to be in the same exam room for each patient**. Instead, the decision held the requirement was simply presence at the same location:

> The Board contends that Smith is subject to discipline for violations of this regulation because he brought two APNs, Gann and Wyman, into the clinic in October, but spent little time at the clinic. The parties agree that the purpose of the regulation is to ensure that a supervising physician become familiar with the abilities of the APN before allowing the APN to practice in the doctor's absence. Smith contends that the regulation was satisfied because he was at the clinic almost every day, although many of those visits were brief. Smith went to the clinic most evenings to do financial work, and he testified that his work

---

[4] Compare

RSMo § 334.037(7). [Assistant Physicians]
> The collaborating physician shall determine and document the completion of at least a one-month period of time during which the assistant physician shall practice with the collaborating physician continuously present before practicing in a setting where the collaborating physician is not continuously present.

RSMo § 334.104(9) [Advanced Practice Nurses]
> It is the responsibility of the collaborating physician to determine and document the completion of at least a one-month period of time during which the advanced practice registered nurse shall practice with the collaborating physician continuously present before practicing in a setting where the collaborating physician is not continuously present.

RSMo § 334.735(13) [Physician Assistants]
> The collaborating physician shall determine and document the completion of a period of time during which the physician assistant shall practice with the collaborating physician continuously present before practicing in a setting where the collaborating physician is not continuously present.

9

> pattern "made him available" to APNs and gave him an opportunity to familiarize himself with their chart work.
>
> Because the text of the regulation is syntactically confusing, we parse it below:
> - An APN who desires to enter into a collaborative practice agreement
> - at a location where the collaborating physician is not continuously present
> - shall practice at the same location with the collaborating advanced practice physician
> - for a period of at least one (1) calendar month
> - before the collaborating APN practices at a location where the collaborating physician is not present.
>
> The regulation does not define "continuously present," and Smith testified that he spent some time at the clinic every day. Assuming, however, that Smith was not "continuously present" at the clinic, the requirement is that the APN "practice" at the same location with the collaborating physician for a period of at least one calendar month before the APN practices at a location where the collaborating physician is not "present." The regulation does not say that the APN and the collaborating physician must practice together every day for that month, or all day. **It simply says that they must practice at the same location**. Literally, Smith and his APNs met that requirement, as they all practiced at the clinic, although clearly Smith spent much of his time practicing at Skaggs as well. We note also that although Smith did not spend much time practicing or supervising at the clinic, Dr. Sukman, the designee physician, was there Monday through Friday, and Gann testified that she worked with him. Smith may have violated the spirit of the regulation when he failed to work closely with his APNs even for an initial period, but **we cannot say that he violated its letter. We find no cause for discipline under § 334.100.2(6).**

*State Bd. of Registration for the Healing Arts, Petitioner, vs. Robert B. Smith, M.D., Respondent*, Mo. Admin. 03-1609 HA (June 10, 2004).[5] **In other words, the statutory language and the regulatory language of Subsection (C) do not require same exam room presence.**

As is evident from subsection (D) regarding assistant physicians, the Board of Registration for the Healing Arts apparently reacted to its loss by adding a new requirement for APs—i.e., presence within the exam room for each and every patient – when it promulgated the assistant physician regulations. But, clearly that was not taken from the statute. As is evident from the above decision, the statute does not have such a requirement. **Rather, the new addition was an attempt to expand and modify the statute.** But, as said above, that is outside its delegated authority.

---

[5] Defendant acknowledges, "AHC cases, of course, are not from courts of law and are not precedential." *Cent. Hardware Co. v. Dir. of Revenue, State of Mo.,* 887 S.W.2d 593, 596 (Mo. 1994). However, that does not prevent this Court from consideration of the hearing commission's reasoning and understanding of the relevant statutory and regulatory language.

Nowhere is the expansive definition of "continuously present" found in any statute. And, as mentioned above, a definition of "continuously present" is not provided in the Board of Registration for the Healing Arts' regulations for advanced practice registered nurses or for physician assistants[6] even though the related statutes have the same provision as for assistant physicians , i.e., requiring "at least a one-month period of time during which the [mid-level provider] shall practice with the collaborating physician continuously present before practicing in a setting where the collaborating physician is not continuously present."

In other words, the Board of Registration for the Healing Arts has not even provided the same interpretation of the term "continuously present" used in three different mid-level provider statutes. This notwithstanding that all three sets of regulations have been modified in the last two years. This is clearly compelling evidence that requiring the presence of the collaborating doctor in the exam room is an improper expansion of the statute.

The Board of Registration for the Healing Arts was delegated the authority to promulgate regulations related to assistant physicians. But, no state agency is ever allowed to "**attempt to expand or modify statutes.**" *Spurgeon*, 549 S.W.3d at 467. When an agency does so, the regulation becomes a nullity. *Parmley v. Missouri Dental Bd.*, 719 S.W.2d 745, 755 (Mo. 1986) ("erroneous regulations are a nullity"). Therefore, as detailed more fully below, the allegations that reference or rely on that statute, Paragraphs 10 and 32, should be stricken from the Indictment.

Wherefore, Defendants seek an Order striking Paragraphs 10 and 32 from the Indictment.

---

[6] *See,* 20 § 2150-5.100 and 20 § 2150-7.135

Dated:  January 2, 2024

Respectfully submitted,

**DOWD BENNETT LLP**

By: <u>*/s/ James G. Martin*</u>
    James G. Martin  #33586 MO
    James B. Martin  #70219 MO
    7676 Forsyth Blvd., Suite 1900
    St. Louis, MO  63105
    314/889-7300 (Telephone)
    314/863-2111 (Facsimile)
    jmartin@dowdbennett.com

*Attorneys for Defendant Sonny Saggar, M.D.*

<u>/s/ William J. Ekiss</u>
William J. Ekiss (#47389)
5770 Mexico Rd., Ste A
St. Peters, MO 63376
Email: billekiss@lampinlaw.com

*Attorneys for Defendant Renita Barringer*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on January 2, 2024, a copy of the foregoing was filed electronically via this Court's CM/ECF system, and therefore served on all parties of record.

        <u>*/s/ James G. Martin*</u>
        James G. Martin